# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV - 2 2020

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

MOTION UNDER 28 U.S.C. SECTION 2255,
TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A
PERSON IN FEDERAL CUSTODY

| | |
|---|---|
| UNITED STATES OF AMERICA | **FMC-Carswell** |
| | PLACE OF CONFINEMENT |
| vs. | **59230-177** |
| | PRISONER ID NUMBER |
| **LACEY RENEE MOORE** | **4:19-CR-00304-O(09)** |
| MOVANT (full name of movant) | CRIMINAL CASE NUMBER |

(If a movant has a sentence to be served in the future under a federal judgment which he wishes to attack, he should file a motion in the federal court which entered the judgment.)

---

## INSTRUCTIONS - READ CAREFULLY

1. This motion must be legibly handwritten or typewritten, and signed by the movant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

2. Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief. No citation of authorities needs to be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

3. Upon receipt, your motion will be filed if it is in proper order. No fee is required with this motion.

4. If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may request permission to proceed *in forma pauperis*, in which event you must execute the declaration provided with this motion, setting forth information establishing your inability to prepay the fees and costs or give security therefor. If you wish to proceed *in forma pauperis*, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

5. Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in different districts, you must file separate motions as to each such judgment.

6. Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction.

7. When the motion is fully completed, <u>the original and two copies</u> must be mailed to the Clerk of the United States District Court for the Northern District of Texas at the appropriate divisional office whose address is:

<u>Abilene Division</u>
341 Pine St, Rm 2008
Abilene, TX 79601

<u>Amarillo Division</u>
205 SE 5th Ave, Rm 133
Amarillo, TX 79101

<u>Dallas Division</u>
1100 Commerce St, Rm 1452
Dallas, TX 75242

<u>Fort Worth Division</u>
501 W 10th St, Rm 310
Fort Worth, TX 76102

<u>Lubbock Division</u>
1205 Texas Ave, Rm 209
Lubbock, TX 79401

<u>San Angelo Division</u>
33 E Twohig Ave, Rm 202
San Angelo, TX 76903

<u>Wichita Falls Division</u>
1000 Lamar St, Rm 203
Wichita Falls, TX 76301

8. Motions which do not conform to these instructions will be returned with a notation as to the deficiency.

# MOTION

1. Name and location of court that entered the judgment of conviction you are challenging:

   Northern District of Texas
   Fort Worth, Texas.

2. Date of the judgment of conviction:

   March 2, 2020

3. Length of sentence: 144 Months

4. Nature of offense involved (all counts):

   21; 846 Conspiracy To Possess with Intent to Distribute A Controlled Substance.

5. (a) What was your plea? (Check one)

   Not guilty ☐   Guilty ☒   Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or or indictment, what did you plead guilty to and what did you plead not guilty to?

   N/A

6. If you went to trial, what kind of trial did you have? (Check one) N/A Jury ☐   Judge Only ☐
7. Did you testify at the trial? (Check one)   Yes ☐   No ☒
8. Did you appeal from the judgment of conviction? (Check one)   Yes ☒   No ☐
9. If you did appeal, answer the following:

   Name of Court: Fifth Circuit Court of Appeals
   Result: Denied
   Date of result: 10-6-2020

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?

    Yes ☒    No ☐  — Filing 3582 Compassionate Release

11. If your answer to 10 was "Yes" give the following information:

    Name of Court: District Court for Northern District.

    Nature of proceeding:

    > Compassionate Release
    > Under 3582(c)(1)(A) - for CoviD and extraordinary and compelling reasons

    Grounds raised:

    > Covid-19
    > Ghost Dope

    Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ☐    No ☒

    Result: None Yet

    Date of result: N/A

    As to any *second* petition, application or motion, give the same information:

    Name of Court: N/A

    Nature of proceeding:

    Grounds raised:

    Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ☐    No ☐

    Result:

    Date of result:

As to any *third* petition, application or motion, give the same information:

Name of Court: _N/A_

Nature of proceeding:

> N/A

Grounds raised:

> N/A

Did you receive an evidentiary hearing on your petition, application or motion?

Yes ☐   No ☒

Result: _N/A_

Date of result: _N/A_

Did you appeal to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

| | | |
|---|---|---|
| First petition, etc. | Yes ☐ | No ☒ |
| Second petition, etc. | Yes ☐ | No ☒ |
| Third petition, etc. | Yes ☐ | No ☒ |

If you did not <u>appeal</u> from the adverse action on any petition, application or motion, explain briefly why you did not:

> No Decision on 3582 Motion at this time.

12. State <u>concisely</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

> **CAUTION:** If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed. However, you <u>should raise in this petition all available grounds</u> (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

<u>DO NOT CHECK ANY OF THESE LISTED GROUNDS.</u> If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right to appeal.

A. Ground One:

Defendant's Attorney failed to object to the drug weight when the actual amount was less than 3.5 grams not 7.7 kilos of "Ghost dope"

Supporting FACTS (tell your story briefly without citing cases or law):

See Attached.

B. Ground Two:

Defendant's Attorney failed to make proper objections to Defendant's PSI.

Supporting FACTS (tell your story briefly without citing cases or law):

See Attached.

C. Ground Three:

Defendant was high due to voluntary intoxication.

Supporting FACTS (tell your story briefly without citing cases or law):

Defendant had at least 2 grams of Methamphetamine and Xanex in her system while being interrogatted. Defendant put "Ghost Dope" on her own case and was unreliable due to intoxication.

D.   Ground Four:

Defendant's attorney failed to file "An Appeal the Defendant" wanted filed, didn't go over any Pros/Cons only file for Appeal on Supervised Release.

Supporting FACTS (tell your story briefly without citing cases or law):

He ask defendant if they wanted to file an appeal. She stated "yes." he Chose to file on Supervised Release Conditions, rather than on the "absence of minor role" as she told him to appeal for.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them:

"Chest Dope" In 3582 Motion As Extraordinary and Compelling Reason. No others ever presented.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
    Yes ☑    No ☐

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing:

William Biggs

(b) At arraignment and plea:

William Biggs

(c) At trial:

———

(d) At sentencing:

William Biggs

(e) On appeal

William Biggs

(f) In any post-conviction proceeding:

———

(g) On appeal from any adverse ruling in a post-conviction proceeding:

Supreme Crt. William Biggs

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?

    Yes ☐   No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

    Yes ☐   No ☒

    (a) If so, give name and location of court which imposed sentence to be served in the future:

    N/A

    (b) And give date and length of sentence to be served in the future:

    N/A

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

    Yes ☐   No ☒

    Wherefore, movant prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

    _____
    Signature

    _____
    Firm Name (if any)

    FMC Carswell
    Address

    PO Box 27137 FT Worth 76127
    City, State & Zip Code

    N/A
    Telephone (including area code)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on  10-26-20  (date).

_____
Signature of Movant

MOVANT'S "GHOST DOPE" WAS BASED UPON UNRELIABLE CONFIDENTIAL INFORMANT INFORMATION

A sentencing court acts within its discretion when it credits confidential informants' statements about drug quantity, but when a defendant objects, the evidence supporting that quantity must be found to be reliable. While that step may prove modest, it needs to be taken, lest a defendant face the risk of being sentenced on the basis of unreliable information.

That is what happen to defendant in the case at hand.

Under the Sentencing Guidelines, quantities matter in drug cases. The higher the quantity of drugs attributed to the defendant, the higher his offense level, and in turn the higher his sentencing range. U.S. Sentencing Guidelines Manual Section 2D1.1.

A criminal defendant has a due process right to be sentenced based on accurate information. Reliability is a central ingredient of the due process analysis: where the district court sentences a defendant based on the drug-quantity guidelines, it must find the government's information sufficiently reliable to determine drug quantity by a preponderance of the evidence. Where a district court relies on evidence that substantially increases drug quantity, it must take care in determining the accuracy of that evidence. And all of this is so where a district court is exercising the discretion recognized by the U.S. Court of Appeals for the Seventh Circuit in United States v. Corner.

A sentencing judge may rely on a presentence report (PSR) if it is well-supported and appears reliable. Under those circumstances, the defendant bears the burden of coming forward with facts demonstrating that the information in the PSR is inaccurate or unreliable. But where these reliability attributes are altogether absent and the PSR instead asserts nothing but a naked or unsupported charge, the defendant's denial of that information suffices to cast doubt on its accuracy.

A court's credibility determinations at sentencing-even where a witness ha a history of criminal activity or drug use, as is often the case for informants in drug-related prosecutions. Though the threshold for a sufficient reliability finding may be low, it is not so low as to be met in the face of a defendant's objection by a confidential informant's out-of-court statement unaccompanied by any additional support.

Facing a defendant's objection, during sentencing, to a confidential informant's (CI's) out-of-court statement unaccompanied by any additional support, the district court must take some step to ensure that the CI-provided information has a modicum of reliability. It remains within the district court's discretion to determine that step. It may be enough for the government to supply the probation office, and, in turn, for the PSR to include, so statement bearing on reliability of information provided by a confidential source. In other instances, the district court may choose to request and review law enforcement reports containing the CI's reported information or information on the CI's reliability. In still others, the district court may find it appropriate to receive testimony from the handling case agent. The court's observations in no way are intended to catalogue or prescribe the available pathways. How to proceed with the reliability inquiry and on what to base the reliability finding are committed to the district court's sound judgment.

{948 F.3d 866} Scudder, Circuit Judge. Police seized 143.7 kilograms of marijuana from Joel Helding's car and apartment, and he pleaded guilty to possessing over 100 kilograms. But at sentencing, the district court held him responsible for the equivalent of 4679.7 kilograms-over 32 time the amount seized. The additional quantity was based solely on Presentence Investigation Report's account that confidential informants told law enforcement' Helding was dealing significant quantities of methamphetamine during the relevant period. The drug quantity determination had a sizable effect on Helding's advisory guidelines range, and it drove his ultimate sentence of 18 years' imprisonment.

A sentencing court acts within its discretion when it credits confidential informants' statements {2020 U.S.. App LEXIS 2} about drug quantity, but when a defendant objects, the evidence supporting that quantity must be found to be reliable. While that step may prove modest, it needs to be taken, lest a defendant face the risk of being sentenced on the basis of unreliable information. The Statements here, without more, fell short of that threshold. So the case of Helding was remanded for resentencing the same should hold true for the movant at issue here.

In January 2018, a confidential informant told Wisconsin law enforcement that Joel Helding and his now-wife, Valerie Flores, planned to drive a substantial amount of methamphetamine from California to Wisconsin. Law Enforcement used the informant's tip to obtain a court to track Flores's phone and thereby monitor the pair's location as they drove. Once Helding and

Flores arrived in Wisconsin, state police stopped and apprehended them. The officers then seized 143.7 kilograms of marijuana from Helding's car, while also finding him in possession of two firearms, a 9mm Smith and Wesson and Ruger LCP .380. A subsequent search of his apartment, undertaken pursuant to a warrant, further uncovered 15.2 grams of marijuana and digital scales containing methamphetamine residue.

A grand jury charged Helding with possessing {2020 U.S. App. LEXIS 3} and intending to distribute more that 100 kilograms of marijuana, 21 U.S.C. Section 841(a)(1), and possessing a firearm in furtherance of drug trafficking, 18 U.S.C. Section 924(c). Helding pleaded guilty to both counts, which subjected him to a mandatory minimum sentence of 15 years' imprisonment - ten for drug offense and five consecutive for firearm possession.

Under the Sentencing Guidelines, quantities matter in drug cases. The higher quantity of drugs attributed to the defendant, the higher his offense level, and in turn the higher his sentencing range See U.S.S.G Section 2D1.1(c). Helding's case provides a stark illustration.

The U.S. Probation Office prepared a Presentence Investigation Report (often shorthanded PSR) in advance of sentencing. In determining drug quantity, the {948 F.3d 867} PSR recommended holding Helding accountable for not only the 143.7 kilograms of marijuana that police found in his car and apartment, but also additional quantities based on an application of the relevant conduct rule in the Sentencing Guidelines. See U.S.S.G. Section 1B1.3(a)(1)(B) (explaining that for guidelines purposes, where a defendant jointly undertakes criminal activity, the relevant conduct includes all reasonably foreseeable acts and omissions within the scope of and in furtherance of a crime). {2020 U.S. App LEXIS 4} The application of that rule here meant that the drug quantity determination needed to account for Helding's dealing of both marijuana and methamphetamine.

Methamphetamine quantities entered the PSR through information provided to law enforcement by five confidential sources (and presumably passed to the probation officer by the prosecutor or case agent). According to the PSR, the confidential informants, or CI's, stated that they bought frequency of those transaction. The PSR, the confidential informants, or CI's, stated that they bought methamphetamine from Helding several times and relayed information of the quantities, prices, and frequency of those transactions. The PSR reported that CI-1 told law enforcement Helding possessed "over a pound" of methamphetamine on December 16, 2017, and had fronted the informant with a couple of ounces every day or two for two months. CI-1 sold the methamphetamine likewise attributed to CI-1 descriptions of Helding's vehicles and apartment as well as information that Helding Supplied methamphetamine to customers in Merrill and Wausau, Wisconsin. In much the same way, the PSR included information from CI-2 specifically, that this individual saw Helding {2020 U.S App. LEXIS 5} sell "multiple ounces" of methamphetamine on three occasions for $500 per ounce.

So, too, did the PSR include information from three other confidential sources. One of them, CI-1082, was the informant who originally told law enforcement about Helding's trip from California to Wisconsin under the mistaken belief that Helding and Flores were transporting methamphetamine instead of marijuana. The PSR also quoted CI-3 as telling law enforcement that Helding once traded a half-ounce of "methamphetamine" for a gun. And the PSR quoted CI-987 as saying Flores regularly sold the informant "methamphetamine" for $40 to $60 per eighth ounce.

From this information the probation officer estimated that Helding possessed and intended to distribute at least 64 ounces of methamphetamine during the relevant period. Helding's drug quantity shot up to 4679.7 kilograms of {2020 U.S. App. LEXIS 6} marijuana.

Helding's advisory sentencing range likewise jumped through the roof. If he had been responsible for just the 143.7 kilograms of marijuana seized, his offense level would have been 26 and his sentencing range 120-150 months for the drug offense. And to the five-year minimum he faced for the gun offense, and Helding's total range would have been 180-210 months. But when the drug quantity skyrocketed to 4679.7 kilograms of marijuana, Helding's offense level increased to 32 and his sentencing range to 210-262 months. Adding the five years for the firearm offense, Helding's total range became 270-322. Put most simply, the spike in {948 F.3d 868} drug quantity increased the advisory range by over seven years.

Helding objected to the PSR's inclusion of the methamphetamine, arguing that nothing corroborated what the CI's reportedly told law enforcement. Nor, he added did {2020 U.S. App. Lexis 7} the PSR include any explanation of why law enforcement found the CI Information credible.

The court held that Heldings drug quantity may not be enhanced by unreliable CI's Information once a defendant objects to the amount of drugs.

## "GHOST DOPE"

Noting his Due Process Right to be sentenced on the basis of reliable information. United States v. Helding (citing United States v. Tucker, 404 U.S. 443; 92 S. Ct. 589, 592 (1972).

Movant argues that the PSR improperly calculated drug quantity and improperly applied a firearm enhancement under Section 2D1.1(b)(1). Movant argues the drug quantity calculation relied upon "ghost dope".

The government violated Her rights under the 5th and 6th Amendment under the Constitution by using ghost drugs to establish drug amounts.

Defendant was deprived the Right to call witness who acts as a certified Chemists who test the drugs. And why Can't the defendant call a chemist because there is NO ACTUAL DRUG.

The Court also requires that evidence be "uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error. Id. at 17. 868 F.3d. 1155 - United States v. Ellis, August 24, 2017.

## Actual Methamphetamine Drug Weight vs. "Ghost Dope"

| Actual Drug Weight | "Ghost Dope" |
|---|---|
| Ingested 3.5 grams in system otherwise "0" actual drug weight. | It was all Ghost Dope. However charged under 7.7 Kilos |
| Level 14 | Level 36 |

If using actual drug weight calculation defendant's sentence would be 8-14 months. When we start to define laws we must look at Congress' Intent. There is no way Congress' intended for defendant's like Ms. Moore to be sentenced to 144 months when there are no actual drugs. The only actual drugs Ms. Moore had in her possession would be the ones she was high on. 3.5 grams the 7.7 kilos never existed it is "ghost dope" placed upon Ms. Moore by herself when she was interrogated while being high. Ms. Moore states she only agreed due to the fact (1) she was high & (2) they said they would let her out.

Her level on the Sentencing Guideline Chart should be 11 not 33.

Defendant's Attorney failed to object to information in her Presentencing Report.

A Presentence Report helps "provide for focused, adversarial development of the factual and legal issues relevant to determining the Appropriate Guideline Sentence." U.S. v. Warner, 23 F.3d 287, 289 (10th Cir. 1994) (quotations, citation, and alteration ommitted).

Rule 32 Rule for Modification Sentence Report

32(f) Fed. R. Crim. P. requires a Party objecting to material in a Presentence Report to "state in writing any objections, including objections to material information.

Defendant's Attorney failed to Correct defendant's daughter's mispelling of her name and also defendant's sister.

The Attorney failed to object to "Ghost dope".

The Attorney failed to correct or recant defendants statements. Three times she was high and told him three times to correct the PSI. The Attorney failed to correct anything.



Fort Worth Division
501 W. 10th St Rm #
Ft worth TX 76102

Name: Lacey L Moye
Reg. No. 54230177
Federal Medical Center, Carswell
P.O. Box 27137
Ft. Worth, TX 76127